**Opinion issued April 4, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00094-CR

————————————

**FERMIN ZEPEDA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1255373**

---

## MEMORANDUM OPINION

A jury convicted appellant, Fermin Zepeda, Jr., of murder, and the trial court assessed punishment at thirty years' confinement. In his sole issue, appellant argues that the evidence was legally insufficient to support his conviction.

We affirm.

## Background

On April 18, 2008, appellant and the complainant, Edward "Eddie" Castaneda, and two other, unidentified men got in a fight. Castaneda was stabbed during the fight and was taken to Ben Taub Hospital where doctors performed surgery to repair damage to his heart. Castaneda survived the surgery, but, due to oxygen deprivation, he suffered brain damage and lived in a vegetative state until his death from pneumonia in 2010. Appellant was indicted for murder in Castaneda's death. The indictment alleged that appellant caused Castaneda's death "by stabbing the complainant with a deadly weapon, namely a knife."

At trial, Castaneda's friend, Patricia Castaneda, testified regarding the events surrounding the fight on April 18, 2008. Patricia testified that she met Castaneda, at a bar that night. Castaneda had an argument with his girlfriend, so he and Patricia decided to go to another bar. As they were leaving, appellant overheard Castaneda complaining about his girlfriend and her friend, Maria. Patricia testified that she recognized appellant as someone she had seen around the bar, but she did not know his name at that time.

She testified that appellant asked Castaneda, "Are you talking about my sister?" Castaneda told appellant that he was not, but "from there, it just escalated, the argument." Patricia stated that appellant "went towards [Castaneda] and

2

started hitting on him and just started a big, old fight." Patricia called for help from the bar, and, when no one came, she started screaming. Two other, unidentified men "jumped in" to the fight. Patricia testified that, at that point, appellant and the two men were both hitting and kicking Castaneda and "had him on the ground." Patricia stated that the fight broke up once people from the bar came out to see what was happening.

Patricia testified that, after the fight broke up, "everybody kind of scattered" except for a group of people around Castaneda. She heard someone say that Castaneda had been stabbed, and "there was somebody trying to stop the bleeding or, you know, hold pressure on the wound and stuff at that point." Patricia stated that she did not see a knife or any other weapon during the fight, but she also testified that she had been focused on getting help and had "stopped paying attention to the fight for a little bit." Patricia later identified appellant from a police photo spread.

Castaneda's cousin, Edelmiro Castaneda, was also at the bar that night and testified at trial. Edelmiro stated that he had had a few beers and played pool with Castaneda, and then he decided to step outside to smoke a cigarette. While he was outside smoking, Castaneda also walked out and told Edelmiro that he was going to leave the bar. The next thing Edelmiro saw was Castaneda fighting with three other men, one of whom Edelmiro identified as appellant. Edelmiro stated that he

3

did not see the beginning of the fight, but he saw the men "punching at [Castaneda]." Edelmiro testified that Castaneda "came around the truck and fell there in front of us, and—well somebody opened up his shirt and—because it looked like he stopped breathing. They opened his shirt, is when he had the stab wounds."

Edelmiro stated that when Castaneda fell to the ground near him, appellant was running after him. Edelmiro saw that appellant had a knife in his hand, and he stated that appellant threatened him with the knife and that appellant "was like, 'Hey, you want some, too?'" The three men, including appellant, tried to leave in their truck, so Edelmiro chased them "around to the backside of the bar" and threw something at their vehicle as they drove away. Edelmiro testified that he did not see either of the other unidentified men with a weapon and that, to his knowledge, Castaneda did not have a knife or weapon either.

In addition to the testimony of several officers and the crime scene investigators involved in the investigation of the case, the State presented the testimony of Dr. Merrill Hines, who performed Castaneda's autopsy. Dr. Hines testified that, as part of the autopsy, he examined the operative report regarding Castaneda's surgery on April 18, 2008. The report indicated that Castaneda received a stab wound to the left chest, became unresponsive upon arrival at the hospital, and was immediately taken to surgery to repair an injury to his heart. The

4

report further stated that Castaneda's tissues, including his brain, were deprived of adequate blood and oxygen due to excessive blood loss from the stab wound and the improper functioning of his injured heart, which resulted in brain damage and Castaneda's living in a persistent vegetative state.

Dr. Hines testified that, at the time he performed the autopsy on January 14, 2010, Castaneda appeared "very undernourished," had a feeding tube, and had a tracheostomy site "where a breathing tube may have been at some time, as well as the characteristic contractures that somebody in a persistent vegetative state would often demonstrate." Castaneda's heart still contained the sutures that were placed there during the repair of the injury from his stabbing in April 2008. Dr. Hines testified that the injuries to Castaneda's heart were consistent with being stabbed in the heart with a knife; that, in his experience, a knife is a deadly weapon; and that Castaneda died as a result of the stab wound to his chest and the associated injury to his heart. Dr. Hines testified that there was "a clear chain of events connecting [Castaneda's] eventual death and the injuries that he sustained in 2008." Castaneda's brain was deprived of oxygen because of the stab wound, which caused his vegetative state, and he eventually "succumbed to the complications commonly seen with that sort of state; in this case, pneumonia." Dr. Hines testified that "the stab wound killed" Castaneda and, thus, was a homicide.

The jury found appellant guilty, and the trial court assessed his punishment at thirty years' confinement. This appeal followed.

## Legal Sufficiency

In his sole issue, appellant argues that the evidence was legally insufficient to support his conviction. He argues that the evidence was insufficient to show that he was the person who stabbed Castaneda. He further argues that there was no evidence regarding the type of knife Edelmiro saw him holding. We construe the latter as a complaint that the evidence was insufficient to support an element alleged in the indictment—that appellant used a "deadly weapon, namely a knife" in committing the murder.

### A.    Standard of Review

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks*, 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing guilt and

6

may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

To convict appellant of murder, the State had to prove, beyond a reasonable doubt, that appellant (1) intentionally or knowingly caused Castaneda's death or (2) intended to cause serious bodily injury and committed an act clearly dangerous

to human life that caused Castaneda's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011).

## B. Identity

Appellant argues that the evidence was insufficient to support his conviction because the testimony only showed that he was present and involved in a fight, but no one saw him "either stab the complainant or have[] a knife in his hand during the fight." However, such direct evidence is not required. As with any other element required to establish an appellant's guilt, identity may be proved by direct or circumstantial evidence, or by inferences. *See Hooper*, 214 S.W.3d at 13; *see also Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (holding that identity may be proven by direct or circumstantial evidence, or even by inferences).

Here, Patricia testified that she saw appellant and two other men fighting Castaneda and that, immediately after appellant ran away, she realized that Castaneda had been stabbed. Edelmiro also testified that he saw appellant and two men fighting Castaneda. When Castaneda fell to the ground in front of him, Edelmiro saw appellant following Castaneda and holding a knife. Edelmiro testified that appellant threatened him with the knife before getting into a vehicle to leave the bar. Edelmiro further testified that, following his collapse, Castaneda appeared to stop breathing, so someone opened his shirt and that was when

Edelmiro realized Castaneda had been stabbed. Patricia and Edelmiro both identified appellant as the person who had fought with Castaneda, and Edelmiro identified appellant as the only person on the scene with a weapon.

Thus, the evidence was sufficient to support the jury's conclusion that appellant was the person who stabbed Castaneda. *See Hooper*, 214 S.W.3d at 13; *Roberson*, 16 S.W.3d at 167.

## C.    Deadly Weapon

Appellant also challenges the sufficiency of the evidence to establish that he used a deadly weapon, namely a knife, in Castaneda's murder. He argues that there was "no evidence whatever describing the knife that Edelmiro Castaneda claims he saw. There was no evidence that the knife that was seen bore bloodstains or was of a size and type such that it was even possible for that particular knife to have caused the injuries that complainant sustained."

A deadly weapon is anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2012). Thus, "[a]n object is a deadly weapon by usage if 'in the manner of its use or intended use,' the object is 'capable of causing death or serious bodily injury.'" *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *see also Thomas v. State*, 821 S.W.2d 616, 620

9

(Tex. Crim. App. 1991) (holding that knife is not deadly weapon per se, but it can be deadly weapon if actor intends to or actually uses object to cause death or serious bodily injury). "Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." *Tucker*, 274 S.W.3d at 691–92.

Here, Patricia testified that appellant instigated a fight with Castaneda. Patricia and Edelmiro both observed appellant and two other men assaulting Castaneda. Edelmiro testified that he realized after the fight broke up that Castaneda had been stabbed, and he saw appellant, and only appellant, holding a knife. Dr. Hines testified that Castaneda died as a result of his stab wound, which caused an injury to his heart and excessive blood loss. In the context of describing Castaneda's injury, Dr. Hines further opined that a knife is a deadly weapon. Thus, the nature of Castaneda's injury supported the jury's inference that appellant used a deadly weapon. *See id.*

We overrule appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.


                                            Evelyn V. Keyes
                                            Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).